IN THE UNITED STATES
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUANITA SNOW, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>) | Case No. 21-CV-___ |
| PEPSI MIDAMERICA, CO., a )<br>Missouri Corp. licensed to do )<br>business in Illinois, )<br>)<br>Defendant. ) | JURY DEMANDED |

# COMPLAINT

NOW COMES Plaintiff Juanita Snow ("Snow") by and through her attorney, Shari R. Rhode of the Rhode Law Firm, and for her Complaint against Defendant Pepsi MidAmerica, Co. ("PMA") states as follows:

## NATURE OF THIS ACTION

This is an action to correct unlawful employment practices based on race under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1988.

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is based on federal questions under 29 U.S.C. § 1331.

2. The venue for this action lies in the Southern District of Illinois in that all the acts alleged as part of this Complaint took place in said District. 29 U.S.C. § 1391.

## PARTIES

3. Snow, a black woman, was at all relevant times herein a resident of Marion Illinois.

1

4. PMA is a Missouri Corporation with its principle place of business located in Marion, Illinois.

## FACTUAL ALLEGATIONS

5. Snow applied for various positions at PMA on December 10, 2019, including Data Entry, Admin., Clerical, and Manager in Training ("MIT") on PMA's Self-Identification Form.

6. At the time of her application, Snow had a Bachelor degree in Business Management which she obtained in May 2015, from Southern Illinois University Carbondale.

7. PMA has a Management in Training program whose purpose includes preparing employees for filling future management positions at PMA.

8. Instead of hiring Snow for a MIT position, PMA hired her in the position of Reconciliation Clerk, paying her $12.00 per hour.

9. MIT positions are salaried positions.

10. Snow accepted the Reconciliation Clerk position to get her foot in the door at PMA.

11. PMA claims the Reconciliation Clerk is a feeder or training department for all other departments to provide foundation skills and understanding of the unique complexities of working in the beverage and vending industry.

12. Snow performed well in the Reconciliation Clerk position.

13. In February 2020, Snow applied for an internal transfer/promotion to the position of H.R. Secretary.

14. Snow was interviewed and promoted into the H.R. Secretary position on February 23, 2020.

15. Snow performed so well that she received a pay increase of $0.50 per hour within two (2) weeks.

16. Based on her consistently strong work performance, Snow received another pay increase of $1.00 per hour in September 2020.

17. Another MIT position opened approximately six (6) months after Snow began work at PMA.

18. Snow repeatedly expressed her desire for a MIT position.

19. Snow was not selected for this MIT position.

20. Another MIT position became available in 2020.

21. Snow again let PMA know she was interested in the MIT position.

22. Christina Pahl, Director of Administration, wrote Snow a letter of recommendation dated June 15, 2020, stating in part:

> Juanita was a strong candidate in the training program in Administration. After her training, she completed a project term working with Accounts Payable. Juanita showed very strong computer skills, professional manners, and initiative to seek additional work. During the period of recovery from the computer virus, Juanita worked in Information Systems to assist with organizing and resetting computers. In this time frame, Juanita again showed hard work and initiative to help the team in any task they needed assistance with. Juanita showed confidentiality with administrative logins that were created and used to help clean the computers of any viruses.

23. Instead of promoting Snow, PMA hired Bobbie Ray, a white female, in the MIT position in August 2020.

24. On information and belief, Ray had no experience in the beverage and vending industry and none at PMA in particular.

25. Ray began at PMA in mid-September 2020.

26. Ray was initially paid $40,000 per year.

27. Less than one (1) year later, Ray was earning approximately $52,000 per year.

28. Approximately two (2) days before Ray began, PMA hired Molly Douglass, another white female, as a MIT for $40,000 per year.

29. On information and belief, Douglass had no experience in the beverage and vending industry and none at PMA in particular.

30. Snow was significantly more qualified than either Ray or Douglass.

31. Snow was told by Jessica Voss (H.R. Director) that she would not be considered for a MIT position because she had to be employed with PMA one (1) year before she could apply for a MIT opening.

32. Snow was also told by Tonya Stutts, the white female who replaced Voss as H.R. Director, not to apply for a MIT position yet because she had not been employed with PMA for at least one (1) year.

33. Instead of hiring Snow into any MIT position, PMA hired white females with significantly lesser qualifications and paid each significantly more money than PMA paid Snow.

34. PMA's alleged reason for not promoting Snow at any time before her resignation was because she had not been employed in her current position for at least one (1) year.

35. PMA's actual internal promotion policy only says:

> "For a candidate to be promoted to a higher position, he must have completed training for his/her present position."  PMA Form 264 (rev. January 27, 2004).

36. The excuse given by PMA for not promoting Snow to any MIT position was because she had not been employed at PMA for one (1) year.

37. PMA's excuse was a pretext for race discrimination.

38.     Because Snow saw her race would prevent her from moving into Management at PMA as she had wanted, she turned in a letter of resignation on November 6, 2020, to Tonya Stutts, H.R. Director.

39.     When Snow gave Stutts her letter of resignation, Stutts offered Snow a MIT position even though Snow still had not been employed with PMA for more than one (1) year.

40.     John Rains, Vice Chair at PMA also offered Snow a MIT position if she would stay even though Snow had not been employed with PMA for more than one (1) year.

41.     Stutts' and Rain's offer is further evidence that the one (1) year requirement was a pretext for denying Snow a management position because of her race.

42.     PMA has an intentional, continual practice of treating people of color in discriminatory ways to keep them from moving into Management and from earning significantly more money while working at PMA.

43.     Despite the size of PMA, it has almost no senior management employees who are black.

44.     As a direct and proximate result of Defendant PMA's unlawful conduct, as described in the above paragraphs, Snow was subjected to intentional unlawful racial discrimination in violation of 42 U.S.C. § 1981.

45.     As a direct and proximate result of Defendant PMA's unlawful conduct, Snow has suffered and will continue to suffer the loss of his employment and career, including loss of salary, wages, bonuses, benefits, and other compensation which such employment entails, as well as future pecuniary losses.

46.     The refusal of PMA to hire and/or promote Plaintiff to a position of MIT because of race was done with malice and/or reckless indifference of the legal rights and interests of

Snow to be free from race discrimination so as to entitle her to an award of punitive damages.

WHEREFORE, Plaintiff Snow respectfully requests that this Court enter judgment in favor of Plaintiff Snow and against Defendant PMA as follows:

    a)    A finding be entered that PMA intentionally discriminated against Snow with malice or reckless indifference to Snow's right to be free from racial discrimination in her terms and conditions of employment at PMA;

    b)    Plaintiff Snow be awarded all wages, benefits, and compensation lost due to PMA's unlawful conduct, including back pay and all future pecuniary losses;

    c)    Plaintiff Snow be awarded compensatory damages for pain and suffering, loss of enjoyment of life, damage to reputation, and humiliation in amounts to be determined at trial by a jury;

    d)    Plaintiff Snow be awarded punitive damages from PMA in amounts to be determined at trial by a jury;

    e)    Plaintiff Snow be awarded prejudgment interest.

    f)    Plaintiff Snow be awarded reasonable attorney's fees and costs, and;

    g)    Plaintiff Snow be awarded such other relief as this Court may deem just and proper.

Respectfully submitted
Juanita Snow, Plaintiff

By: /s/ Shari R. Rhode
Shari R. Rhode, Attorney for Plaintiff
Bar No. 2324598
Rhode Law Firm
1405 West Main Street
Carbondale, IL 62901
Phone: 618.549.4287
Fax: 618.549.4343
Email: shari@rhodelawfirm.com