IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUANITA SNOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-1206-DWD |
| | ) |
| PEPSI MIDAMERICA CO., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In this matter, Plaintiff Juanita Snow asserts employment discrimination claims against her former employer, Defendant Pepsi MidAmerica Co. ("PMA"). Now before the Court is Defendant's Motion to Stay (Doc. 7). Defendant asks the Court to stay this matter pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4. Defendant argues that Plaintiff entered into an alternative dispute resolution agreement with Defendant at the time she was hired, and that agreement requires Plaintiff to submit her claims to arbitration pursuant to Defendant's Alternative Solutions to Solving Employee DispuTes, Dispute Resolution Program ("A.S.S.E.T." or "A.S.S.E.T. D.R.P.") (Doc. 8). Plaintiff opposes the Motion (Doc. 9).

On February 9, 2022, the Court found that genuine issues were in dispute as to the whether a valid arbitration agreement was formed between the parties and set this matter for an evidentiary hearing pursuant to Section 4 of the Federal Arbitration Act (Doc. 11). In preparation for the hearing, the parties conducted limited discovery and submitted a

1

joint pretrial memorandum.  Plaintiff further submitted a trial brief (Doc. 19), with a portion of Plaintiff's deposition transcript attached (Doc. 19-1).  Upon review of the record, the Court converted the evidentiary hearing to a status conference, and further directed the parties to submit additional briefs on the issue of the purported delegation clause in the A.S.S.E.T. D.R.P. agreement (Doc. 23; Doc. 24).  The parties submitted their briefs on June 8, 2022 (Doc. 27; Doc. 28).  Having considered the briefing and arguments of the parties, and for the reasons detailed below, Defendant's Motion to Stay will be granted.

## Background

As alleged in her Complaint, on or about December 10, 2019, Plaintiff, a black female, applied for various employment positions with Defendant, including the position of "Manager in Training (MIT)" (Doc. 1, ¶ 5).  Plaintiff was hired for the hourly position of a reconciliation clerk (Doc. 1, ¶ 8).  In February 2020, Plaintiff applied for an internal transfer and was promoted to the position of H.R. Secretary (Doc. 1, ¶¶ 13-14).  Over the course of her employment, Plaintiff repeatedly expressed interest in Defendant's MIT positions and applied for MIT positions as they became available (Doc. 1, ¶¶ 18-21).  Instead of hiring Plaintiff for any MIT position, Defendant continued to hire white females with significantly lesser qualifications than Plaintiff (Doc. 1, ¶ 33) in violation of 42 U.S.C. § 1981 (Doc. 1, ¶¶ 44-46).

Defendant maintains an alternative dispute resolution policy.  Plaintiff attached a full copy of Defendant's 20-page A.S.S.E.T. D.R.P. policy to her response (Doc. 9-1).  Plaintiff does not contest the accuracy of the language contained in the A.S.S.E.T. D.R.P.

2

policy, instead, she argues that Plaintiff never agreed to the terms of the A.S.S.E.T. D.R.P. policy because Plaintiff did not receive or read a copy of the agreement. Relevant to this dispute, the policy provides:

**A**LTERNATIVE **S**OLUTIONS TO **S**OLVING **E**MPLOYEE DISPU**T**ES **D**ISPUTE **R**ESOLUTION **P**ROGRAM

(**A.S.S.E.T. D.R.P.**)

**SPECIAL NOTICE TO EMPLOYEES**

THIS POLICY CONSTITUTES A BINDING AGREEMENT BETWEEN YOU AND PEPSI MIDAMERICA FOR THE RESOLUTION OF EMPLOYMENT DISPUTES

> By continuing your employment with Pepsi MidAmerica (PMA) or any of its subsidiary companies …, you and PMA are agreeing as a condition of your employment to submit all covered claims to Pepsi MidAmerica's Alternative Solutions to Solving Employee DispuTes, Dispute Resolution Program (A.S.S.E.T. or A.S.S.E.T. D.R.P.), to waive all rights to a trial before a jury on such claims, and to accept an arbitrator's decision as the final, binding and exclusive determination of all covered claims.  This policy is designed to provide the employee with general information about the A.S.S.E.T. Program and the responsibilities, rights, and benefits the program provides for the employees.
>
> …
>
> A.S.S.E.T. DRP is a structured dispute resolution process that consists of three levels: Level 1 – Local Management Review; Level 2 – Mediation (if a dispute involves a covered claim); and Level 3 – Binding Arbitration (if the dispute involves a covered claim). Employees must complete each level of the process before proceeding to the next level.
>
> …
>
> At Level 3, Binding Arbitration, an independent arbitrator provides the Employee and PMA with a ruling on the merits of the Employee's covered claim(s). The arbitrator's decision is the final, binding and exclusive remedy for the Employee's covered claim(s) and is equally final and binding upon PMA.
>
> Employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), that are covered claims shall be settled exclusively by final and binding arbitration. The Association ("AAA") shall administer mediation and arbitration for Pepsi MidAmerica's Alternative Solutions to

3

> Solving Employee DispuTes Resolution Program (A.S.S.E.T. D.R.P.) policy, by the Rules and Procedures of AAA's Employment Arbitration Rules and Mediation Procedures.
>
> ...
>
> **COVERED CLAIMS**
>
> While Employees may submit any employment-related dispute at Level 1, only covered claims will be accepted and processed at Levels 2 and 3. Claims that are covered shall be governed and interpreted in accordance with the laws of Illinois. The parties acknowledge that this agreement evidences transactions that involve interstate commerce. Covered claims arising out of this agreement. Covered claims are claims relating to or arising out of the employment relationship that:
>
> A. PMA may have against an Employee, and/or
>
> B. The Employee may have against PMA and/or any individual employee who is acting within the scope of his or her employment with PMA, where the Employee alleges unlawful termination and/or unlawful conduct on the part of PMA including, but not limited to, the following:
>
>> (1) Claims/relating to involuntary terminations, such as layoffs and discharges (including constructive discharges) when those terminations are alleged to be discriminatory or otherwise unlawful under applicable federal or state law;
>>
>> (2) Employment discrimination and harassment claims based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, disability, or other characteristics protected by applicable laws;
>>
>> ...

(Doc. 9-1, pp. 1-5).

Plaintiff testified that she never saw a copy of the A.S.S.E.T. D.R.P. policy at any time during her employment with Defendant. Specifically, Plaintiff submitted a Declaration stating that when she was hired, Plaintiff was given "various documents which I was told to sign but at no time before, during, or after my employment [did] anyone at PMA ever provide me with a copy of the A.S.S.E.T. Agreement." *Declaration*

4

*of Juanita Snow*, Doc. 9-2, ¶¶ 3-4; *see also Plaintiff's Deposition*, Doc. 19-1, pp. 3-4 (Plaintiff confirmed that she never saw a copy of the A.S.S.E.T. D.R.P. agreement at any time prior to the litigation in this matter).

Plaintiff did, however, sign two other documents on December 16, 2019 (Doc. 19-2; Doc. 19-3).  The first document is titled "Alternative Solutions to Solving Employee DispuTes Dispute Resolution Program (A.S.S.E.T.) Acknowledgement and Receipt of A.S.S.E.T. Policy" (Doc. 19-2).  In its entirety, this document states:

> I Juanita Snow (Print Full Name) on December 16, 2019, received a copy of Pepsi MidAmerica's (PMA) Alternative Solutions to Solving Employee DispuTes, Dispute Resolution Program (A.S.S.E.T.) policy to review and read in anticipation of the use of the A.S.S.E.T. Program in order to resolve all covered issues that are related to my employment with PMA.  In addition, I understand that I am responsible for becoming familiar with the content in the A.S.S.E.T. policy in order to address any questions that I have or may have in the future.

(Doc. 19-2).  Plaintiff's signature appears below this paragraph (Doc. 19-2).

Plaintiff also executed the form titled "A.S.S.E.T. D.R.P. PARTICIPATION AGREEMENT FOR NEW HIRES LEGAL RIGHTS ASSOCIATED WITH THISAGREEMENT" which provides:

> My participation in this program is a condition of my employment.
>
> I Juanita Snow agree that any dispute that arises from or relates to my employment with Pepsi MidAmerica (PMA) will use the terms and conditions of the A.S.S.E.T. D.R.P. for resolution. The duration of this agreement shall run throughout and after the employee's employment ceases, whether by termination or resignation. This agreement shall be governed and interpreted in accordance with the substantive law of the state or federal circuit, or both, in which the claim(s) arose. If any provision of this agreement shall be determined to be invalid it shall not render the whole agreement invalid.

>	I have been informed of my rights and the terms of the A.S.S.E.T. D.R.P. Policy by a representative of PMA by being given a copy of the A.S.S.E.T. D.R.P. Policy, and other materials on the A.S.S.E.T. D.R.P. In addition, I was given a sufficient time and ample opportunity to read over the terms and conditions of the policy before signing this agreement. I am aware and understand that by signing this *legal binding agreement*, I agree to the terms and conditions of the policy, to participate in A.S.S.E.T. D.R.P. program and to use it as a way to handle disputes that arise out of my employment with Pepsi MidAmerica. Through material provided, presentations, and other sources, I understand the rights and obligations that apply to Pepsi MidAmerica and me.

(Doc. 19-3).  Plaintiff's signature appears below these paragraphs (Doc. 19-3).

Plaintiff does not contest that she signed these two documents (Doc. 19, p. 3); *see also Plaintiff's Deposition*, Doc. 19-1, p. 3 (acknowledging that Plaintiff knew she had signed a copy of the "A.S.S.E.T. D.R.P. participation agreement for new hires").

## Discussion

Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA") pursuant to its A.S.S.E.T. D.R.P program.  The FAA mandates that courts enforce valid, written arbitration agreements.  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Arbitration should be compelled under the FAA when "three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate."  *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (citing 9 U.S.C. §§ 3–4).

Courts are responsible for deciding whether an agreement to arbitrate exists before ordering arbitration. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 741–42 (7th Cir. 2010). In doing so, the Court turns to state contract law to determine whether a binding arbitration agreement exists. *Id.* at 742; *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 2); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Once a court is satisfied that an agreement to arbitrate exists, the FAA instructs the court to stay proceedings on issues subject to arbitration and compel arbitration pursuant to the agreement. *Clark v. Snap, Inc.*, No. 3:21-CV-9-DWD, 2021 WL 2376359, at *3 (S.D. Ill. June 10, 2021), *aff'd sub nom. K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022). However, parties are permitted to delegate these gateway issues, including whether an arbitration agreement exists, to the arbitrator. *See Id.* at 3 (citing *Ed's Pallet Servs., Inc. v. Applied Underwriters, Inc.*, No. 15-CV-1163-SMY-SCW, 2017 WL 9287091, at *3 (S.D. Ill. Apr. 7, 2017) (collecting cases).

Here, Defendant argues that the gateway questions of validity and arbitrability have been delegated to the arbitrator and are thus beyond this Court's purview. Defendant points to the following clause in the A.S.S.E.T. D.R.P. agreement which incorporates the American Arbitration Association ("AAA")'s Employment Arbitration Rules and Mediation Procedures:

> Employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), that are covered claims shall be settled exclusively by final and binding arbitration. **The Association ("AAA") shall administer mediation and arbitration for Pepsi MidAmerica's Alternative Solutions to Solving Employee DispuTes Resolution Program (A.S.S.E.T. D.R.P.) policy, by the Rules and Procedures of AAA's Employment Arbitration Rules and Mediation Procedures.**

7

(Doc. 9-1, p. 3) (emphasis added).

Courts repeatedly hold that "an arbitration provision that incorporates the rules of the American Arbitration Association demonstrates an intent to submit gateway issues or arbitrability and formation to arbitration."  *See Clark*, 2021 WL 2376359, at *3 (citing *Ed's Pallet Services, Inc.*, 2017 WL 9287091, at *3 (collecting cases)); *see also Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (Arbitration clauses which incorporate arbitral rules, provide "'clear and unmistakable' evidence that the parties agreed to arbitrate "'arbitrability'"); *Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) ("[W]here the parties agree to arbitration pursuant to the rules of the [AAA], the parties incorporate the AAA's rules into the arbitration agreement.").

Here, the A.S.S.E.T. D.RP. agreement incorporates the AAA's Employment Arbitration Rules and Mediation Procedures (Doc. 9-1, p. 3).  Rule 6 of the AAA's Employment Arbitration Rules and Mediation Procedures provides that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement", and that "The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."  AAA Employment Arbitration Rule 6(a)-(b), available at https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf.  Rule 6 is identical to AAA Commercial Arbitration Rule 7(a), of which "[v]irtually every circuit to have considered the issue has determined that incorporation of the American

8

Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). Accordingly, if Plaintiff agreed to the terms in the A.S.S.E.T. D.R.P. agreement, then the issue of arbitrability has been delegated to the arbitrator. Whether a contract exists is a question for the Court to decide. *K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) ("[e]ven the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate.").

Plaintiff argues that she did not agree to any terms of the A.S.S.E.T. D.R.P. agreement, let alone its delegation provision, because Plaintiff never received or saw a copy of the agreement. Thus, Plaintiff argues that she could not have knowingly agreed to the specific terms of the agreement. In other words, Plaintiff claims there was no "meeting of the minds" regarding the terms of the arbitration agreement so that a valid arbitration agreement could exist, and such that Plaintiff would be required to arbitrate her claims. Although Plaintiff claims she did not knowingly agree to the specific terms of the A.S.S.E.T. D.R.P. agreement, she does admit to voluntarily signing the two acknowledgement forms on December 16, 2019. A plain reading of the acknowledgment forms reveal that Plaintiff represented the following:

> That she "received a copy of [Defendant's] Alternative Solutions Alternative Solutions to Solving Employee DispuTes, Dispute Resolution Program (A.S.S.E.T.) policy to review and read in anticipation of the use of the A.S.S.E.T. Program in order to resolve all covered issues that are related to my employment with PMA. In addition, I understand that I am responsible for becoming familiar with the content in the A.S.S.E.T. policy in order to address any questions that I have or may have in the future;

9

> "That any dispute that arises from or relates to my employment with [Defendant] will use the terms and conditions of the A.S.S.E.T. D.R.P. for resolution."; and
>
> She had "been informed of my rights and the terms of the A.S.S.E.T. D.R.P. Policy by a representative of [Defendant] by being given a copy of the A.S.S.E.T. D.R.P. Policy, and other materials on the A.S.S.E.T. D.R.P. In addition, I was given a sufficient time and ample opportunity to read over the terms and conditions of the policy before signing this agreement. I am aware and understand that by signing this *legal binding agreement*, I agree to the terms and conditions of the policy, to participate in A.S.S.E.T. D.R.P. program and to use it as a way to handle disputes that arise out of my employment with [Defendant].

(Doc. 19-2; Doc. 19-3).

Construing the unambiguous representations in the acknowledgement forms, Plaintiff demonstrated an objective intent to participate in the A.S.S.E.T. D.R.P. program. Plaintiff's conflicting testimony that she never read or saw the program policy does not change the fact that she agreed to participate in the program pursuant to the terms and conditions in the A.S.S.E.T. D.R.P. policy. Illinois law[1] permits the incorporation of other documents into separate agreements. *See Polley v. Nw. Univ.*, 560 F. Supp. 3d 1197, 1204 (N.D. Ill. 2021) ("[I]f a contract explicitly references terms in another document, that second document is incorporated into the contract."); *People v. Soskin*, 2021 IL App (2d) 191017, ¶ 30 (citing *Wiczer v. Wojciak*, 2015 IL App (1st) 123753 ("A contract may incorporate all or part of another agreement by reference."); *see also Philadelphia Indem. Ins. Co. v. Chicago Tr. Co.*, 930 F.3d 910, 914 (7th Cir. 2019) (citing *Ward v. Hilliard*, 2018 IL

---

[1] There is no dispute that Illinois law applies here.

App (5th) 180214) ("[T]here are no 'magic terms' that are required to incorporate another document by reference.").

Accordingly, by signing the acknowledgement forms Plaintiff provided clear and unmistakable evidence that she agreed to participate in the A.S.S.E.T. D.R.P. program pursuant to the terms and conditions contained in the separate A.S.S.E.T. D.R.P. document, notwithstanding Plaintiff's failure to obtain or read the actual policy terms contained in that separate document. *Iliev v. Elavon, Inc.*, No. 18 C 8208, 2019 WL 3554309, at *3 (N.D. Ill. July 31, 2019) ("A person who signs a contract is presumed to know its terms and consents to be bound by them."); *see also Janiga*, 615 F.3d at 742–43 (citing *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 380 (7th Cir. 2009)) ("If the terms of the contract are unambiguous, the court must enforce the contract as written.").  As Plaintiff agreed to be bound to the terms of the A.S.S.E.T. D.R.P. agreement, and the A.S.S.E.T. D.R.P. agreement contains a valid delegation clause delegating the issue of arbitrability to the arbitrator, the Court must refer to the arbitrator the question of the agreement's arbitrability.

Even if the issue of arbitrability had not been delegated to the arbitrator, for the same reasons that the Court found that Plaintiff agreed to be bound to the terms of the A.S.S.E.T. D.R.P. agreement and its delegation provision, Plaintiff also agreed to be bound by the remaining arbitration provisions in the A.S.S.E.T. D.R.P. agreement. Accordingly, Plaintiff's remaining defenses concerning her inability to perform all three stages of Defendant's dispute resolution process, and the validity of the A.S.S.E.T. D.R.P. agreement under the Illinois Workplace Transparency Act, 820 Ill. Comp. Stat. Ann. 96/1-

10, are questions for the arbitrator. *See K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022) (issues of whether an arbitration agreement are against public policy are properly considered by the arbitrator rather than the Court); *see also E. River Cap., Inc. v. VLD Access, Inc.*, No. 19-CV-1398-JPG, 2020 WL 4003292, at *3 (S.D. Ill. July 15, 2020) (procedural questions of arbitrability, including whether prerequisite conditions to arbitration was completed, should be decided by the arbitrator).

## Conclusion

For these reasons, Defendant's Motion to Stay (Doc. 7) is **GRANTED**. All proceedings in this case are **STAYED**. All pending motions are **DENIED, as moot, and without prejudice**, and all deadlines are **TERMINATED**. The parties are **DIRECTED** to file a status report advising the Court of the status of the arbitration proceeding on or before December 1, 2022, and every June and December thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**SO ORDERED.**

Dated: June 10, 2022

_____
DAVID W. DUGAN
United States District Judge